IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN HARRIS, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 14 C 9106 |
| v. | ) ) |
| CHICAGO TRANSIT AUTHORITY, and AMALGAMATED TRANSIT UNION LOCAL 241, | ) ) ) Judge John Z. Lee ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Karen Harris ("Harris") filed this lawsuit against Defendants Chicago Transit Authority ("CTA") and Amalgamated Transit Union Local 241 ("Local 241") (collectively "Defendants"). Harris contends the CTA discriminated against her based on gender, race, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, the Americans with Disabilities Act ("ADA"), and the International Covenant on Civil and Political Rights ("ICCPR"). Harris also alleges the CTA engaged in retaliatory practices against her by denying her medical leave, creating a hostile work environment, and discharging her in violation of Title VII, the Fair Labor Standards Act ("FLSA"), the Family and Medical Leave Act ("FMLA"), as well as §§ 1981 and 1983. Harris further contends the CTA defamed her and engaged in activity in violation of various other state laws. Lastly, Harris alleges that, pursuant to the Illinois Public Labor Relations Act ("IPLRA"), Local 241 failed to represent her properly in her interactions with the CTA.

Defendants now move separately to dismiss the actions pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), maintaining that Harris' complaint fails to state a claim upon

which relief can be granted and fails to establish this Court's jurisdiction. For the following reasons, the Court grants in part and denies in part CTA's motion and grants Local 241's motion in its entirety.

**Factual Background**

Harris was a bus driver for the CTA and was represented through a collective bargaining agreement by Local 241. Compl. 2. During her employment with the CTA, Harris drove buses out of the CTA's Forest Glen Garage. *Id.* at 3.

Central to Harris' complaint are several alleged incidents of harassment related to her employment with the CTA. For example, on September 20, 2013, Harris was told by her manager, Ronnie Brown, "Baby, I mean Mrs. Harris you have a lot of fans around here." *Id.* at 54. Approximately one year later on September 27, 2014, an unnamed supervisor stated that Harris had "2 strikes" against her: "1. [she] was a woman., 2. [she] was a minority." *Id.* at 6.

As a result of such incidents, Harris filed multiple internal grievances and charges with the EEOC and IDHR. *Id.* at 4, 171–76. On November 22, 2013, Harris filed an EEOC charge against the CTA for retaliation as part of a continuing action ("EEOC Charge"). *Id.* at 57. The EEOC Charge claimed that, on September 20, 2013, Harris was subject to harassment, complained about the harassment to no avail, and "was subsequently subjected to disciplines and suspensions." *Id.* On January 14, 2014, the EEOC issued a dismissal and notice of right to sue for the EEOC Charge. *Id.* at 61. Harris also filed a charge with the IDHR ("IDHR Charge") for harassment based on disability and retaliation on January 2, 2014. *Id.* at 60. Harris, however, voluntarily withdrew the IDHR Charges in August 2014. *Id.* at 74–75.

In her complaint, Harris also complains of other incidents involving her employer. In particular, Harris claims she attended a "stressful[]" meeting with her boss on December 5, 2013.

*Id.* at 9. As she stood up from a seated position during the meeting, she felt lightheaded and passed out. *Id.* She was taken to see Dr. Jafri, the CTA's occupational health doctor, at which time she overheard Dr. Jafri explain to the emergency room physician that Harris has a glass eye and should not be driving for the CTA. *Id.* The following day, Harris received a letter notifying her of potential FMLA eligibility for this incident. *Id.* at 36. Harris asserts that all of her "FMLA was cancelled in lieu of [sic] the retaliation." *Id.* at 21.

On June 16, 2014, the signal box in Harris' bus malfunctioned during operation; she complained of the problem, but was nevertheless instructed to continue driving the bus. *Id.* at 137. Harris also complained of problems with the bus's engine and camera. *Id.* at 139–40. On August 24, 2014, the CTA found Harris' complaints of engine and camera problems lacked merit. *Id.* at 140. According to Harris, the more she reported such defects to her employer, the more she would be subjected to discipline. *Id.* at 137.

On August 7, 2014, Harris filed unfair labor practice charges ("ILRB Charges") against Local 241 and the CTA with the Local Panel of the Illinois Labor Relations Board ("ILRB"). *Id.* at 117, 121. The ILRB Charges contain allegations about Local 241's representation of her on September 20, 2013 and June 19, 2014, but contain no allegations of discrimination by Local 241 against Harris. *Id.* at 118. The ILRB Charges also contain allegations that the CTA suspended her on account of "old grievance[s]" and "report[s]" filed against her manager. *Id.* at 122. The ILRB dismissed these charges on October 23, 2014, on the grounds that Harris had failed to provide requested evidence, the documents that she did provide were irrelevant, and the allegations were insufficient to infer that Local 241 and CTA had violated the IPLRA in any way. *Id.* at 106–14.

The CTA ultimately terminated Harris' employment on October 10, 2014. *Id.* at 146. On December 10, 2014, Harris filed a complaint with this Court, alleging that Defendants had discriminated against her on the basis of her race, gender, and disability, failed to reasonably accommodate her disabilities, failed to stop harassment, and retaliated against her because she had asserted her protected rights. *Id.* at 18. The complaint also includes hundreds of pages of documents and letters, some of which contain Harris' handwritten notes in an attempt to raise further claims. In these notes, Harris alleges the CTA denied her medical leave in violation of the FMLA, defamed her, and violated "Article7/19 of U.S. International Covenant and Civil Right + Political." *Id.* at 6, 21. Harris also generally alleges "failure to prove collusion, acts of malice, failure to prove injury, injury negligence, failure to prove reckless and intentional behavior, outrageous and extreme conduct compromising employee safety + health, failure to stop hostile work environment." *Id.* at 18–19.[1]

## **Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(1) asserts that the Court lacks the subject-matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1). When ruling on a motion under Rule 12(b)(1), "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir. 1979)). "[I]f the

---

[1] By intertwining voluminous exhibits with the pages of the complaint and handwritten allegations, Harris makes construing her claims difficult. Rule 8 of the Federal Rules of Civil Procedure provides that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Harris' 177-page complaint is anything but "short and plain." Nor, for that matter, is her 349-page response to Defendants' motions to dismiss, which is similarly structured utilizing handwritten notes on countless pages of exhibits. In future submissions, Harris should keep her exhibits separate from the arguments and allegations contained in the body of the document and should reference those exhibits only by their respective designation (*e.g.*, Ex. A, Ex. B, etc.).

4

complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *Id.*

To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). When considering such motions, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The claim must be "plausible on its face." *Twombly*, 550 U.S. 544 at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff "must do more in the complaint than simply recite the elements of a claim." *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). Complaints that offer "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Additionally, *pro se* complaints are held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A *pro se* complaint should be dismissed pursuant to Rule 12(b)(6) only "if it appears beyond doubt that the plaintiff can prove

5

no set of facts in support of her claim which would entitle her to relief." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (internal quotations omitted). However, unsupported conclusions of fact and conclusions of law remain insufficient to defeat a motion to dismiss, *Young v. Breeding*, 929 F. Supp. 1103, 1106 (N.D. Ill. 1996), and a *pro se* plaintiff can plead herself out of court by pleading facts that undermine the allegations set forth in her complaint. *Id.* at 846.

## Analysis

### I. Local 241's Motion

Harris attaches to her Complaint the charges she filed with the ILRB. Compl. 117–18. The Court construes this as an attempt to state a claim against Local 241 for a breach of the duty of fair representation. However, a breach of the duty of fair representation claim filed by a public employee is not governed by federal law; instead, "a union's breach of its duty of fair representation is an unfair practice within the exclusive jurisdiction of the Illinois Labor Relations Board." *Tomas v. State Dep't of Empl. Sec.*, 2009 WL 2916840, at *3 (N.D. Ill. Sept. 2, 2009) (citing *Foley v. AFSCME*, 556 N.E.2d 581, 583 (Ill. App. Ct. 1990)). And should Harris seek judicial review of any final order of the ILRB, Illinois law provides that "such judicial review shall be afforded *directly in the appellate court* for the district in which the aggrieved party resides or transacts business." 5 Ill. Comp. Stat. 315/11(e) (emphasis added); *see also Bd. of Educ. of Peoria Sch. Dist. No. 150 v. Peoria Fed'n of Support Staff, Sec./Policeman's Benev. & Protective Ass'n Unit*, 998 N.E.2d 36, 53 (Ill. 2013) ("[T]he respective statutory schemes governing the ILRB and IELRB provide that final decisions from those boards are reviewable by direct appeal to the appellate court."). This Court accordingly lacks jurisdiction over Harris' fair representation claims and dismisses them pursuant to Rule

12(b)(1). *See*, *e.g.*, *Watson v. E. St. Louis Sch. Dist. 189*, No. 11 C 0632, 2013 WL 497863, at *2 (S.D. Ill. Feb. 8, 2013) (Because judicial review of her fair representation claim rested solely with Illinois Appellate Court, the "district court lack[ed] subject-matter jurisdiction over Plaintiff's claims against her union.").

## II. The CTA's Motion

### a. Failure to Exhaust

The CTA asserts that Harris' race, gender, and disability discrimination claims, retaliation claims, and disability discrimination claims should be dismissed because Harris did not exhaust her administrative remedies; that is, Harris failed to file this action within ninety days of receiving her right to sue letter from the EEOC and voluntarily withdrew her IDHR claims. Def.'s Mem. 4–5. But "failure to exhaust administrative remedies is an affirmative defense." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). And thus it would generally be inappropriate to consider at this stage in the proceedings; "the time to deal with an affirmative defense is after it has been raised." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 664 (7th Cir. 2011). For this reason, the Court declines to dismiss Harris' gender or race discrimination and retaliation claims at this preliminary juncture.

With regard to Harris' claims asserting her discrimination based on a disability, however, the Court finds that an exception to the general rule makes dismissal appropriate here. The exception occurs where a plaintiff pleads herself out of court by plainly "set[ting] out all of the elements of an affirmative defense." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

Harris attaches to her complaint a "Voluntary Withdrawal Request Form," signed by her and dated August 6, 2014, in which she requests to have her IDHR charges withdrawn. Compl.

7

74.  On the following page, Harris provides the order confirming her request to withdraw the IDHR Charge and formally closing it. *Id.* at 75.  In so doing, Harris admits that she did not exhaust her administrative remedies as to her disability claims, having withdrawn her claims before the IDHR and having never raised them before the EEOC.  Moreover, because she admits she did so voluntarily, Harris forfeits her ability to raise some exception to the defense, such as equitable estoppel or equitable tolling. *See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999) (equitable estoppel defense requires wrongdoing by defendant that prevented exhaustion, and equitable tolling requires that the plaintiff lacked information that prohibited her from exhausting).  Accordingly, Harris' disability discrimination claims, failure to accommodate claims, and retaliation claims based on protected activity regarding disability are dismissed for failure to exhaust her administrative remedies.

   **b. Scope of the Charges**

   The CTA also argues that, even if the Court declines to dismiss her claims of discrimination and retaliation based on race and gender for failure to exhaust, these claims still fall outside of the EEOC complaint and cannot be asserted here. Def.'s Mem 4–6.  Generally, a Title VII plaintiff cannot bring claims in a federal lawsuit that were not included in an EEOC (or IDHR) charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, No. 14 C 7905, 2015 WL 2195090, at *4 (N.D. Ill. May 6, 2015).  However, because "'the Civil Rights Act is designed to protect those least able to protect themselves,'" the rule for determining the proper scope of a subsequent judicial inquiry is a forgiving one: "'the complaint in a civil action . . . may properly encompass . . . any discrimination like or reasonably related to the allegations of the charge and growing out of such

allegations.'" *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167–68 (7th Cir. 1976) (quoting *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971)). *Jenkins* set forth a two-part requirement: (1) "there must be a reasonable relationship between the allegations in the charge and the claims in the complaint," and (2) "the claim[s] in the complaint [must] reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500.

The November 22, 2013, EEOC Charge claimed that Harris was subject to harassment on September 20, 2013, when she was called "baby," and after she complained of the harassment, she was subjected to discipline and suspension. Compl. 54, 57. The CTA argues Harris' claims of race and sex discrimination should be dismissed here because "the Charges do not mention or hint at any [such] discrimination by CTA." Def.'s Mem. 5.

As an initial observation, the Court notes that nowhere in the EEOC Charge does Harris contend the harassment was based on race; the lone allegation of harassment is that she was referred to as "baby." Thus, her claims of discrimination or retaliation based on race fall outside the scope of the EEOC Charge. Her claims of gender-based discrimination and retaliation, however, pose a closer question.

While an alleged act of sexual harassment may suggest she was working in a "sexually hostile environment," it does not automatically follow that she was terminated on the basis of her gender. *See Cheek*, 31 F.3d at 503–04 (even though plaintiff's EEOC claim directly claimed defendant discriminated against her on basis of race while additionally suggesting her termination was due to gender, these claims of discrimination were not related to sexual harassment allegations in the complaint). Sexual harassment involves "'[u]nwelcome sexual advances, requests for sexual favors,' . . . [or other] 'conduct [that] has the purpose or effect of

9

unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Id.* at 504 (quoting 29 C.F.R. § 1604.11(a)). This differs from a specific act of discrimination that results in an employee's termination, which is what Harris alleges in this lawsuit. *See id.* "At a minimum, establishing a reasonable relationship requires that the two claims involve the same conduct and the same individuals." *Swearingen-El v. Cook Cnty. Sheriff's Dep't*, 416 F. Supp. 2d 612, 616 (N.D. Ill. 2006) (citing *Cheek*, 31 F.3d at 501). From what Harris has alleged, her discrimination claims asserted here — that she was fully terminated based upon race and gender — involve neither the same conduct nor the same individuals as the harassment claims she asserted before the EEOC. Accordingly, her race and sex discrimination claims fall outside the scope of the EEOC Charges and must be dismissed.

### c. Failure to State a Claim

What remains are Harris' retaliation claims based on complaints of gender harassment, hostile work environment claims based on gender, §§ 1983 and 1981 claims, FMLA claims, FLSA claims, a claim of state law defamation, claims under the ICCPR, and various additional allegations Harris raises in a paragraph on page 18 of her complaint. The CTA contends that these remaining claims fail under Rule 12(b)(6).

#### i. Retaliation Based on Complaints of Gender Harassment

To state a claim of retaliation in violation of Title VII, a plaintiff must plead that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal connection exists between the two. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). According to the CTA, to the extent any alleged retaliation was due to filing a grievance, such claims must fail because the filing of a grievance cannot form the basis for

protected activity in a subsequent claim for retaliation if the grievance itself did not involve actions in violation of Title VII. It cites to *Eskridge v. Chicago Board of Educaction*, 47 F. Supp. 3d 781, 794 (N.D. Ill. 2014), in support of this notion, but the case is inapposite for two reasons.

First, *Eskridge* involved a summary judgment motion — not a motion to dismiss — and the court had a more developed factual record from which to judge the basis of the grievances. *Id.* at 795. Second, from that factual record, the court in *Eskridge* was able to determine that the grievances did "not indicate that any discrimination occurred because of [plaintiff's] age, race or sex [and could not] form the basis for protected activity." *Id.* at 794. That is not the case here. Construing all allegations and inferences in Harris' favor, it appears that the grievances were based upon the September 20, 2013, incident where Harris was allegedly called "baby" by her manager. Compl. 54, 57. Title VII "protects persons . . . from retaliation for complaining about the types of discrimination it prohibits." *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 704–05 (7th Cir. 2000) (quoting *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000)). And Title VII prohibits conduct of the very nature Harris complained about in her grievances. *Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998). The Court denies the CTA's motion to dismiss Harris' retaliation claims.

  ii. **Hostile Work Environment Based on Gender**

To state a claim for hostile work environment, Harris must plausibly show: (1) her work environment was objectively and subjectively offensive; (2) she was harassed due to her gender; (3) the conduct complained of was either severe or pervasive; and (4) there is a basis for employer liability. *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). Harris does allege two incidents of harassment; namely, the events of September 20, 2013, and September

24, 2014. However, providing two examples separated by a year is not sufficient to allege the type of "severe or pervasive" conduct required to state a claim for hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("offhand comments, and isolated incidents" insufficient to support claim for hostile work environment); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (eight offensive gender-related comments "were too isolated and sporadic to constitute severe or pervasive harassment"). Harris' hostile work environment claims are therefore dismissed without prejudice.

### iii. Section 1983 Claims

The Complaint also alleges a violation of Harris' rights under § 1983 on the basis of her race. Compl. 18. Under § 1983, a municipal entity like the CTA may be liable only for their own illegal acts as distinguished from acts of their employees. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Accordingly, a plaintiff seeking to impose liability on a municipal entity under § 1983 must prove that "action pursuant to official municipal policy" or "custom" caused the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A court cannot infer the existence of a widespread practice or custom absent allegations of discrimination in addition to a plaintiff's own isolated experiences. *Zubek v. City of Chi.*, No. 04 C 5399, 2006 WL 1843396, *5 (N.D. Ill. July 5, 2006).

Here, the Complaint contains no allegations that Harris was harmed as a result of an express policy, a widespread practice or custom, or by any person with final policy-making authority.[2] Nor does the Complaint contain allegations that the CTA has any formal policy permitting discrimination against African Americans generally. At best, the allegations, if proven, may show a concerted effort by the CTA to harass or discriminate against Harris

---

[2] In the CTA, the Board of Directors retains the final policymaking authority for establishing the employment practices of the agency. *Radic v. Chi. Transit Auth.*, 73 F.3d 159, 160 (7th Cir. 1996).

12

*individually*, but they do not suggest any institutionalized or widespread custom within the CTA. Absent such a policy, Harris' allegations fail to satisfy the pleading requirements for a § 1983 municipal liability claim under *Monell*, and Harris' § 1983 claims are dismissed without prejudice.

      **iv. Section 1981 Claims**

In addition, the complaint alleges violation of Harris' rights under 42 U.S.C. § 1981 on the basis of race. Section 1981 proscribes impairment by discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. But the CTA is a state actor, and the Supreme Court has concluded that § 1983 constitutes the exclusive federal remedy for the violation of rights guaranteed in § 1981 by state governmental units. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). The Seventh Circuit has recently affirmed this holding and joined "the overwhelming weight of authority" by holding that "*Jett* remains good law." *Campbell v. Forest Preserve Dist.*, 752 F.3d 665, 671 (7th Cir. 2014); *see also Rosado v. Chi. Transit Auth.*, 2014 WL 3687507, *3 (N.D. Ill. July 24, 2014) ("§ 1983 provides the exclusive remedy for violations of § 1981 committed by state actors *such as the CTA*") (emphasis added). Because § 1981 provides no remedy against the CTA, Harris' § 1981 claims are dismissed with prejudice.

      **v. FMLA Claims**

According to the CTA, Harris' FMLA claims must also fail. In her complaint, Harris contends that "[a]ll of my FMLA was cancelled in lieu of [sic] the retaliation." Compl. 21. She also attaches a letter dated December 5, 2013, that says she may be eligible for FMLA leave. *Id.* at 36. The Court construes these allegations as an attempt to state a claim for FMLA

13

interference.³ To state a claim for FMLA interference, the plaintiff must allege that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). The factual allegations in support of the claim may be sparse, but Harris does attach a dated letter showing that she was eligible for FMLA leave after she passed out from a meeting with her boss. Compl. 36. She contends she suffers from stress disorder and that the CTA wrongly denied her FMLA leave after the incident. *Id.* at 21. Viewing all these allegations in Harris' favor, the Court finds she has stated a claim for FMLA interference.

### vi. Retaliatory Discharge Under FLSA

On an additional page supplementing her form complaint, Harris writes "Retalitory [sic] Discharge . . . Fair Labor Standards Act." Compl. 6. A retaliatory discharge claim under the FLSA requires, among other things, the plaintiff to have engaged in "'activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.'" *Mousavi v. Parkside Obstetrics, Gynecology & Infertility, S.C.*, No. 10 C 4765, 2011 WL 3610080, at *4 (N.D. Ill. Aug. 16, 2011) (quoting *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486–87 (10th Cir. 1996)). The FLSA governs wages and hours of employment. 29 U.S.C. §§ 201 *et seq.* Harris makes no allegations of statutorily protected expression or activity related to wages or hours of employment and, thus, quite clearly fails to state a claim for retaliatory discharge. Harris' FSLA claims are therefore dismissed without prejudice.

---

³ The CTA's motion also addresses whether Harris has stated a claim for FMLA retaliation. But a claim for FMLA retaliation applies to situations where the employer acts in retaliation against an employee for taking FMLA leave, not a situation where an employer denied FMLA benefits in retaliation for something else, which is the dispute here. *See Burnett v. LFW Inc.*, 472 F.3d 471, 477–82 (7th Cir. 2006).

### vii. Defamation

In Illinois, a plaintiff claiming defamation must allege: (1) the defendant made a false statement of fact about her; (2) there was an unprivileged publication to a third party with fault by the defendant; and (3) the publication damaged the plaintiff. *Haywood v. Lucent Techs. Inc.*, 169 F. Supp. 2d 890, 915 (N.D. Ill. 2001). Words that impute an "inability to perform, or want of integrity to discharge duties of office or employment" are said to be defamation *per se*. *Marczak v. Drexel Nat'l Bank*, 542 N.E.2d 787, 789 (Ill. App. Ct. 1989). On page seven of the Complaint, Harris handwrote the words "defamation/slander – intentionally." Compl. 6. Harris does not directly connect this handwritten statement to any of her factual allegations. Nevertheless, Harris does allege that Dr. Jafri, acting in his role as the CTA's occupational health doctor,[4] opined to an emergency room physician that Harris should not be driving for the CTA because she has a glass eye and falsely claimed she suffered from a stroke. *Id.* at 8–9. These allegations are sufficient to state a claim for defamation *per se*, and the Court denies the CTA's motion to dismiss in this regard.

### viii. ICCPR

Harris also attempts to bring a cause of action pursuant to Articles 17 and 19 of the ICCPR. The substantive provisions of the ICCPR are not self-executing and do not provide a private cause of action. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 728 (2004) (citing 138 Cong. Rec.

---

[4] While Dr. Jafri is not a named defendant in this matter, "[t]he doctrine of respondeat superior is fully applicable to suits for defamation," *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1140 (7th Cir. 1985), and "it is sufficient for recovery against a public entity to prove that an identified employee would be liable even though that employee is not named a defendant in the action." *McCottrell v. City of Chi.*, 481 N.E.2d 1058, 1060 (Ill. App. Ct. 1985). Of course, Dr. Jafri's relationship with the CTA may not be sufficient to hold the CTA liable for his actions under an agency theory, but this is a factual determination better suited for later stages of the proceedings. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014) ("Agency is a notoriously fact-bound question.").

8071 (1992)). Thus, to the extent that the Complaint alleges violations of the ICCPR by the Defendants, these claims are dismissed with prejudice under Rule 12(b)(6).

### ix. Additional Claims

In addition to the claims above, the Complaint alleges and attributes to the CTA "failure to prove collusion, acts of malice, failure to prove injury, injury negligence, failure to prove reckless and intentional behavior, outrageous and extreme conduct compromising employee safety + health." Compl. 18–19. But this laundry list of claims — some of which are not even proper causes of action — clearly fails to give the Defendants here "fair notice" of the claims and "the grounds upon which [they] rest[]." *Twombly*, at 555. Although Rule 8 does not require detailed factual allegations, it certainly demands more than Harris has provided, which is nothing but "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* at 678. Accordingly, the Court dismisses these additional claims under Rules 8 and 12(b)(6).[5]

## **Conclusion**

For the foregoing reasons, the Court grants, in part, and denies, in part, the CTA's motion to dismiss [23] and grants in full Local 241's motion [13]. The Court dismisses with prejudice Plaintiff's claims under § 1981 and the ICCPR. The Court dismisses without prejudice Plaintiff's claims of race and sex discrimination under Title VII; retaliation based on complaints of race and disability discrimination; failure to accommodate and disability discrimination under the ADA; hostile work environment; race discrimination under § 1983; and retaliatory discharge under the FLSA. The Court also dismisses without prejudice all of the "Additional Claims" listed on pages 18 and 19 of the Complaint. Lastly, the Court dismisses all claims against Local

---

[5] In its motion, the CTA also addresses "whether [Harris] asserts a whistleblower cause of action." Pl.'s Mem. 12. In her complaint, Harris does not cite to any whistleblower statute, refer to herself as a whistleblower, or otherwise even appear to assert such a claim. Nor did she otherwise indicate of her intention to raise such a claim in her response to the motion. The Court thus finds it unnecessary to address these arguments.

241, and Local 241 is dismissed as a defendant. Plaintiff may pursue her claims against the CTA for retaliation based on complaints for gender harassment, FMLA interference, and defamation.

SO ORDERED          ENTER:  9/10/15

_____
**JOHN Z. LEE**
**United States District Judge**