# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KAREN HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 9106 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karen Harris ("Harris") has brought this action against the Chicago Transit Authority ("CTA"), raising various claims stemming from her employment as a CTA bus driver. The Court previously granted the CTA's motion to dismiss in part, and later granted the CTA's first motion for summary judgment in part. Remaining are Harris's claims of defamation and interference with leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq*. The CTA has filed a second motion for summary judgment as to the two remaining claims. For the following reasons, the motion for summary judgment [125] is granted.

## Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule ("LR") 56.1 establishes a procedure for presenting facts on summary judgment. Under LR 56.1(a)(3), the movant must submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." In turn, the opposing party must file "a concise response to the movant's statement." LR 56.1(b)(3). This response must consist of "numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed." LR 56.1(b)(3)(A). In addition, the opponent must "respon[d] to each numbered

paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B).

Because Harris is proceeding *pro se*, the CTA served her with a "Notice to Pro Se litigant Opposing Motion for Summary Judgment," as required by LR 56.2. *See* LR 56.2 Notice, ECF No. 129. The statement explained LR 56.1 and cautioned Harris that if she did not comply with the rule, "the judge will be forced to assume that you do not dispute the facts which you have not responded to." *Id.* at 2.

The Court informed Harris that her response to the second motion for summary judgment was due on or before September 6, 2018. *See* Order of 7/10/18, ECF No. 124. However, Harris did not file a response by that deadline, nor did she seek an extension of time to do so. As of the date of this opinion, the Court has received no further communications from Harris regarding the motion for summary judgment.

While the Court is mindful of the fact that Harris is proceeding *pro se*, *pro se* litigants are not excused from complying with procedural rules. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). Based on Harris's failure to file a response to the motion for summary judgment, the Court will rule on the motion without the benefit of her response. The Court will therefore accept the CTA's "uncontroverted version of the facts to the extent that it is supported by the evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

**Background**

The following facts are undisputed or have been deemed admitted. Harris worked for CTA as a bus driver from September 2008 to October 10, 2014. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 4, ECF No. 127. While Harris was employed by the CTA, a number of events occurred giving rise

to her suit before this Court. First, on July 4, 2011, Harris called in to work to take FMLA leave due to high blood pressure. *See id.*, Ex. 1 (hereafter "Pl.'s Dep."), at 47:7–18, 83:2–5. A CTA manager denied the request, both over the phone and in person after Harris arrived at work. *Id.* at 47:1–48:9. Harris filed a report complaining of the manager's behavior and detailing her attempts to take FMLA leave on July 4. *See* Def.'s LR 56.1(a)(3) Stmt., Ex. 11, ECF No. 74.

Harris incurred several absences from work in the fall of 2013. She had previously been approved for intermittent FMLA leave from February 28, 2013, through February 27, 2014. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 32, ECF No. 127. On September 20 and November 8 through 10, she informed the CTA that she was absent due to illness. *Id.* ¶¶ 25–26. Thereafter, Sedgwick CMS—the CTA's third-party administrator for employee medical claims—notified Harris that she had "exceeded her approved frequency and/or duration" of approved FMLA leave. *Id.* ¶¶ 21, 27. Harris was given fifteen days to submit recertification from her medical provider establishing that she was entitled to leave, but she failed to do so by the deadline. *Id.* ¶¶ 28–29, 33.

In addition to the incidents in which Harris alleges she was denied FMLA leave, her claims arise in part from events that occurred on December 5, 2013. On that day, Harris collapsed during (or directly after) a CTA disciplinary hearing. *Id.* ¶ 16. She was taken to an emergency room, where she was diagnosed with fainting. *Id.*, Ex. 12. She was then examined by Dr. Maqsood Jafri, the CTA's occupational health doctor, to see if she was clear to return to work as a bus driver. *Id.* ¶ 18. Dr. Jafri "didn't feel comfortable giving [Harris] an all clear" because he was concerned that Harris may have injured her left eye due to a stroke or other trauma. *Id.* ¶ 19. In fact, Harris has worn a glass eye throughout her life. *Id.* ¶ 15. According to Harris, she overheard Dr. Jafri tell another doctor that Harris had "a glass eye," that she "did not need to be driving for CTA because [she] had a glass eye," and that she may have suffered a stroke or head injury. *Id.* ¶ 20.

Harris filed this lawsuit on November 11, 2014, raising a number of claims against the CTA. On September 10, 2015, the Court granted in part and denied in part the CTA's motion to dismiss. *See generally Harris v. Chi. Transit Auth.*, No. 14 C 9106, 2015 WL 5307721 (N.D. Ill. Sept. 10, 2015). Subsequently, on September 22, 2017, the Court granted in part and denied in part the CTA's motion for summary judgment. *See generally Harris v. Chi. Transit Auth.*, No. 14 C 9106, 2017 WL 4224616 (N.D. Ill. Sept. 22, 2017). The CTA then filed a motion for reconsideration. *See* Def.'s Mot. Reconsideration, ECF No. 106. In light of the issues raised therein, the Court permitted a second round of summary judgment motions. *See* Order of 7/10/18, ECF No. 124. The CTA filed its second motion for summary judgment as to all remaining claims on August 9, 2018. Harris did not file a response.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

### I. FMLA Interference

The CTA moves for summary judgment on Harris's FMLA-interference claim. To prove a claim of FMLA interference, Harris must show that (1) she was eligible for FMLA protection, (2) the CTA was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) the CTA denied her FMLA benefits to which she was entitled. *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Failure to establish even a single element dooms an FMLA-interference claim. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223–24 (7th Cir. 2015) (affirming grant of summary judgment to employer where employee satisfied all but one element of FMLA-interference claim). The CTA argues that (1) to the extent Harris's FMLA-interference claim is based on the events of July 4, 2011, it is time-barred, and (2) to the extent her claim is based on the events of September through November of 2013, Harris cannot prove that she was entitled to leave, that she had provided sufficient notice of intent to take leave, or that the CTA denied her FMLA benefits to which she was entitled.

#### A. July 4, 2011 Request for Leave

The CTA argues that Harris's FMLA-interference claim based on events that transpired on July 4, 2011 is time-barred. "A plaintiff must bring an FMLA claim 'not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.'" *Sampra v. U.S. Dep't of Trans.*, 888 F.3d 330, 332 (7th Cir. 2018) (quoting 29 U.S.C. § 2617(c)(1)). However, if the employer willfully violated the FMLA, the statute of limitations is three years. *Id.* (citing 29 U.S.C. § 2617(c)(2)). Here, Harris claims she was denied FMLA leave on July 4, 2011. Her complaint, however, was not received by this Court until November 13, 2014.

*See* ECF No. 1. Thus, under either the two-year or three-year statute of limitations, Harris's FMLA-interference claim is time-barred to the extent it is based on the events of July 4, 2011. Accordingly, the CTA is entitled to summary judgment on this aspect of the claim.

### B. Requests for Leave Between September 20 and November 11, 2013

The CTA also contends that it is entitled to summary judgment on Harris's FMLA-interference claim based on events that occurred between September 20 and November 11, 2013, because Harris has failed to satisfy three of the five elements of an FMLA-interference claim.

First, the CTA argues that Harris cannot show that she was entitled to FMLA leave for the period between September 20 and November 11, 2013. Although Harris had been previously approved for FMLA leave, her approved leave only allowed for a total of 1 day and 2 hours of leave per three-month period. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 32. Yet by November 8, 2013, Harris had already taken two absences that exceeded the recommended frequency and/or duration of her FMLA leave. *See id.* ¶ 31; *id.*, Ex. 7, Letter from Sedgwick. Thus, the undisputed facts show that Harris did not have sufficient FMLA leave to cover her absences between September 20 and November 11, 2013; indeed, by the time she took her second absence during this period, she had already exceeded her amount of approved leave. As such, there is no evidence from which a reasonable jury could conclude that Harris was entitled to FMLA leave on the dates in question.

Second, even if Harris were entitled to FMLA leave during this period, the CTA also contends that Harris cannot proceed on her FMLA-interference claim because she has failed to show that she had provided sufficient notice of her intent to take FMLA leave on the dates in question. "[T]he FMLA places the burden of giving notice on the employee," but "[t]he employee's duty is merely to place the employer on notice of a probable basis for FMLA leave." *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 724 (7th Cir. 2007) (quoting *Aubuchon v. Knauf*

*Fiberglass GmbH*, 359 F.3d 950, 953 (7th Cir. 2004)). Here, the undisputed facts show that Harris did not meet this burden. Rather than placing the CTA on notice of a probable basis for FMLA leave, on September 20 and November 8 through10, 2013, Harris merely informed the CTA that she was sick. *See* Def.'s LR 56.1(a)(3) Stmt. ¶¶ 25–26; *id.*, Ex. 4; *id.* Ex. 5. Furthermore, although she had an opportunity to explain her absences at her December 2013 disciplinary hearing, she failed to mention that she had intended to use FMLA leave for those absences. *See* Def.'s LR 56.1(a)(3) Stmt. ¶¶ 13–14; *id.*, Ex. 6. Instead, Harris again described the absences as "sick entries." *Id.*, Ex. 6. But notifying an employer that one is "sick" is insufficient to give notice of intent to take FMLA leave. *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008–09 (7th Cir. 2001) ("A reference to being 'sick' . . . did not suggest to the employer that . . . the FMLA . . . could be applicable."). Thus, there is no evidence in the record from which a reasonable jury could conclude that Harris provided the CTA with notice of intent to take FMLA leave on September 20 or November 8 through 10, 2013.

Third, because Harris cannot establish that she was entitled to FMLA leave, or that she provided the CTA with notice of her intent to take FMLA leave on the dates in question, no reasonable jury could conclude that she was denied FMLA benefits to which she was entitled. Thus, the CTA is entitled to summary judgment on Harris's FMLA-interference claim concerning her absences from work between September 20 and November 11, 2013.

For the foregoing reasons, the CTA's motion for summary judgment on Harris's FMLA-interference claim is granted.

## II. Defamation

The CTA also seeks summary judgment on Harris's defamation claim. The defamation claim is based on Dr. Jafri's alleged statements that Harris had a glass eye, that she should not be

7

driving for the CTA, and that she may have suffered a head injury or stroke. Under Illinois law, the elements of a defamation claim are that (1) the defendant made a false statement about the plaintiff, (2) that the defendant made an unprivileged publication of that statement to a third party, and (3) that this publication damaged the plaintiff. *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1102–03 (N.D. Ill. 2016) (citing *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009)). The CTA argues that it is entitled to summary judgment on Harris's defamation claim because none of Dr. Jafri's statements were defamatory.

The CTA first contends that Harris's defamation claim cannot survive because Dr. Jafri's statement that Harris had a glass eye is substantially true. "[A] statement that is not technically true in every respect but is 'substantially true' does not constitute defamation." *Id.* at 1003–04. The Court agrees, because the undisputed facts show that Harris has a glass eye. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 15; Pl.'s Dep. at 38:6–18.

Harris also claims, however, that Dr. Jafri said that Harris "did not need to be driving for [the] CTA." As the Court noted in its prior opinion, this statement could be considered defamatory *per se*. A statement that "impute[s] that a person lacks ability or otherwise prejudices that person in her . . . profession" is defamatory *per se*. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 835, 839 (Ill. 2006). However, such a statement is not actionable if it involves an assertion of an opinion and not a fact. *Moriarty v. Greene*, 732 N.E.2d 730, 740–41 (2000). Whether a statement is one of opinion or fact is a question of law. *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008). In determining whether a statement is fact or opinion, a court should consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Hadley v. Doe*, 34 N.E.3d 549, 558 (Ill. 2015). "If it is clear that the speaker is expressing a subjective view

8

or interpretation, such as when the speaker discloses the facts forming the basis for the statement," the statement is not defamatory. *Doctor's Data*, 170 F. Supp. 3d at 1113 (finding that doctor's description of lab report's classification of patient's results as "misleading," when immediately followed by the factual basis for that description, was non-actionable opinion); *see also Brenner v. Greenberg*, No. 08 C 826, 2009 WL 1759596, at *3 (N.D. Ill. June 18, 2009) (noting that "[a] speaker may be liable for any false statement of facts, but not for the statements of opinion made on the basis of those facts"). The CTA argues that it is entitled to summary judgment on Harris's defamation claim because Dr. Jafri's statement was one of opinion.

The Court is persuaded that Dr. Jafri's statement that Harris "did not need to be driving for [the] CTA" is non-actionable opinion. Harris recalled in her deposition that Dr. Jafri stated that she "did not need to be driving for [the] CTA because [she] had a glass eye." *See* Pl.'s Dep. at 142:18–20. The essence of this statement is that Dr. Jafri did not believe Harris should be driving a bus for the CTA because she had a glass eye. Rather than a verifiable, factual statement, this statement is merely an expression of Dr. Jafri's opinion about Harris's fitness to perform her job duties. And because Dr. Jafri disclosed that this statement was based on known, nondefamatory facts, it is non-actionable opinion. *See Doctor's Data*, 170 F. Supp. 3d at 1113.

Finally, Harris claims Dr. Jafri told another doctor that Harris may have suffered a head injury or stroke. The CTA again argues that this statement is an opinion. The Court agrees. It is clear from the context of Dr. Jafri's statement that it was not intended as an assertion of fact. Rather, the statement indicated that Dr. Jafri believed Harris had *possibly* suffered a stroke or head injury, based on the facts known to him at the time. When a speaker and listener both know the facts underlying an opinion or assume their existence—thus rendering a statement of the facts unnecessary—the speaker is not liable for statements of opinion made on the basis of those facts.

9

*See Brenner*, 2009 WL 1759596, at *3. Here, Dr. Jafri and the emergency room doctor knew the facts underlying Dr. Jafri's statement: that Harris had been hospitalized after fainting and suffering a fall. Based on those facts, Dr. Jafri opined that Harris may have suffered a stroke or head injury. An opinion based on known or assumed, nondefamatory facts is non-actionable, *see id.*, so Harris's defamation claim fails with respect to this statement as well.

Based on the summary judgment record, a rational jury could not conclude that Dr. Jafri's alleged statements are defamatory. Accordingly, the CTA is entitled to summary judgment on Harris's defamation claim.

## Conclusion

For the foregoing reasons, the CTA's motion for summary judgment [125] is granted. Judgment is entered in favor of Defendant. This case is hereby terminated.

**IT IS SO ORDERED.**  ENTERED: 2/12/19

_____
**JOHN Z. LEE**
**United States District Judge**